STATE ex rel. E. M. POPE v. GERMANIA BANK OF ST. PAUL.[1]

January 8, 1909.

Nos. 15,902—(89).

**Insolvent Bank—Distribution to Creditors.**

> Appeal from an order directing the distribution to creditors of a fund paid into court to abide its determination of the amount due from stockholders secondarily liable for the debts of the defendant bank. *Held*, that the facts found by the trial court are sustained by the evidence, and that it did not err in directing such distribution.

Petition to the district court for Ramsey county by John A. Lagerman, as receiver of the insolvent Germania Bank of St. Paul, praying for the annulment of an order dated May 27, 1904, which was entered pursuant to the decision and mandate in the case of Willius v. Mann, 91 Minn. 494, and restrained the receiver from enforcing an assessment against stockholders in that bank secondarily liable to the creditors, and praying that he be ordered to distribute to the creditors a fund of $9,507.25. Marion R. Furness and three others, the sole heirs and legatees of Alexander Ramsey, answered, and at the hearing Frank Crawshaw also objected. The matter was heard before Olin B. Lewis, J., who made two orders, one discharging the restraining order and decreeing that all remedies against the persons primarily liable had been substantially exhausted, and the other that said fund be distributed according to law by the receiver with other moneys now or which may hereafter come into his hands. From the latter order, the Ramsey heirs and Frank Crawshaw appealed. Affirmed.

The receipt given by the receiver to the executor of the estate of Alexander Ramsey, deceased, recited that the latter paid under protest the sum of $2,168.64, the part of the claim filed and allowed by the probate court for and on account of 20½ shares of the capital stock of the bank owned by the deceased on January 4, 1897, and for which he did not receive new certificates on the reorganization of the bank. The receipt also contained the following sentence: "In

[1] Reported in 119 N. W. 61.

the event of its being hereafter decided by the courts that no stock-holder of said bank of the same class as said deceased with respect to said 20½ shares is liable for the assessment upon which said claim is based, or that said stock is liable for less than one hundred per cent., neither said payment nor this receipt shall prevent the return to said executor or the persons entitled to the residue of said estate upon proper application to and approval by the district court for said Ramsey county of said sum of $2,168.64, or so much thereof as is equitable under such decision."

The form of receipt given to Frank Crawshaw is given in the opinion.

*W. H. Yardley,* for appellants Furness, and *Edward P. Sanborn,* for appellant Crawshaw.

The holders of 2000 shares failed to pay the first assessment and their shares were declared by the directors of the bank forfeited and canceled, and it was ordered that these shares should not be reissued. This left remaining and outstanding 2000 shares. The holders of these shares paid the 75 per cent. assessment. Upon reorganization the bank had $200,000 capital represented by 2000 shares. Certificates were issued to the contributing stockholders for 1,453 of these shares and to creditors for 567 shares, and a record of this ownership was duly entered in the new stock ledger opened by the bank. Since the bank was never authorized to issue any new shares of stock and never in fact did issue any new shares, it follows that the stock with which it recommenced business was the identical stock which remained after the cancellation and retirement of the defaulting shares. And since Ramsey, Crawshaw and the other contributing shareholders held but 1,453 shares after the reorganization when they had 2000 before and since creditors held 567 shares after the reorganization when they held none before, it follows conclusively that the shares issued to the creditors must have been those surrendered by the contributing shareholders. It does not appear that there was any record made of this transaction in the so-called "stock transfer book" of the bank, but such entry was not necessary. The surrender of the old certificates to the bank, the issue and delivery by the bank of new certificates and the registration thereof in the new stock ledger were

an effectual transfer. All parties are estopped from questioning its validity. The creditors who took these shares became full stockholders and liable as such. Therefore there must have been a transfer. Cronstadt v. Willius, 90 Minn. 150, 153.

The evidence falls far short of establishing the fact that all remedies for the enforcement of the primary liability have been exhausted. It does not appear that the slightest effort has ever been made to collect the primary liability from the creditor stockholders whose liability was paid in part by their deposits and those on whose liability no payment has been made, except by the application of receiver's dividends upon the claims of those of the second class who are still creditors as well as stockholders. That the cost of enforcing this liability would be great is immaterial. Exhaustion, not disregard and neglect of the primary liability is a condition precedent to enforcement of the secondary liability.

The liability as transferrors of Ramsey, Crawshaw, and the other contributing stockholders upon the shares transferred to the creditor stockholders on August 16, 1897, is fixed and determined by section 13, subd. 3, art. 9, of the constitution and the general laws then in force (Laws 1895, c. 145, § 5). Such liability continued for one year after the date of the transfer, and no longer, and ceased on August 16, 1898, long prior to the commencement of these proceedings. Harper v. Carroll, 62 Minn. 152; Harper v. Carroll, 66 Minn. 487, 496; Hunt v. Seeger, 91 Minn. 264.

As a prerequisite to reorganization, without which reorganization would have been impossible, Ramsey and his fellow stockholders surrendered 567 of their shares, including Ramsey's 20½ and Crawshaw's 34, to the bank in order that they might be reissued for the full par value thereof to creditors in payment of debts to that amount. The surrender and transfer became effective upon the entry of judgment confirming the reorganization. From that moment Ramsey and his fellows ceased to have any ownership, dominion or power over said shares, the transfer of which constituted an irrevocable payment and contribution by them to aid in the reorganization. At no time thereafter, with or without intent to evade liability, could they have assigned, transferred or in any manner affected the title to said shares. Not being transferrors prior to insolvency, and being powerless to

transfer after reorganization, since the shares were owned by others, how can they possibly come within the operation of section 4, c. 89, Laws 1897? No transfer pending reorganization could have any effect, of course, without the subsequent sanction and confirmation of the court, consequently such inchoate transfers could not have been within the contemplation of the legislature when it passed the act of 1897. Hunt v. Roosen, 87 Minn. 68, 79, is decisive of this question.

Under the very terms of the receipt given to Crawshaw he was entitled to the return of the $3,400. The defense of the bar of the statute of limitations, as well as every other defense, was and is equally open to Crawshaw after he deposited the money with the receiver as before. For it was expressly agreed, as the receipt shows, that the deposit of this money with the receiver should not in any manner prejudice any rights of his. If the receiver had desired to have his rights determined and the question finally settled as to what Crawshaw's liability was, the courts were open to him, and suit could have been brought by him at any time to determine those questions. Until such suit was brought and determined Crawshaw's rights and defenses were under the terms of this receipt preserved to him. No such suit was brought, and no proceeding of any kind was instituted by the receiver until the petition in this proceeding was filed in August, 1907. This was more than eight years after the receiver was appointed.

*James E. Trask,* for respondent.

START, C. J.

This is an appeal from an order of the district court of the county of Ramsey directing the distribution by the receiver herein of a fund of $9,507.25 paid into court by certain stockholders of the defendant corporation to abide the final determination of the amount of their liability as such stockholders for the debts of the defendant. The Germania Bank of St. Paul, the defendant, was a banking corporation organized under the laws of this state. On January 4, 1897, the bank made an assignment for the benefit of its creditors, being then insolvent and owing debts to the amount of $750,000. The then outstanding stock amounted to $400,000, divided into shares of $100

each. On August 12, 1897, it was reorganized by the judgment of the district court, which expressly provided that the reorganization should not operate to release any stockholder from his liability for the then existing debts of the bank.

The plan of reorganization, so far as here material, was substantially this: To repair the capital by levying a 75 per cent. assessment upon the outstanding stock, and by securing voluntary subscriptions from the creditors of the bank for such additional stock as might be necessary to realize at least the sum of $200,000. The capital to be reduced to such amount as should be raised by the assessment and subscriptions, to be effected by the voluntary surrender and cancellation of shares, or by sale and cancellation thereof in the event of failure of the holders to pay the assessment thereon. The holders of 1,914 shares of stock were in default in the payment of the assessment, and such shares were declared forfeited and canceled, and it was ordered that they should not be reissued, but the amount thereof be deducted from the capital stock of the reorganized bank. The holders of the remaining shares paid the 75 per cent. assessment in full. The old stock certificates, representing the 2,000 shares of capital stock upon which the assessment had been paid, were nearly all surrendered to the reorganized bank, and it issued new certificates of stock therefor. There were also issued to creditors of the old bank 567 shares of the stock of the reorganized bank, who accepted the same in payment of their deposits with the old bank. The reorganized bank received all the assets of the original bank.

The bank again became insolvent, and on July 26, 1899, Gustav Willius was appointed receiver thereof by the district court of the county of Ramsey, and on September 17, 1903, the court by its order made an assessment of one hundred per cent. upon the entire 4,000 shares of stock issued and outstanding on January 4, 1897, the date of the original insolvency and assignment by the bank. Upon an appeal from such order to this court it was held that the stockholders of the reorganized bank were primarily liable for the debts of the old bank, and the stockholders of the latter who did not accept stock in the new bank were secondarily liable for such debts only as were in existence on the day of the reorganization of the bank. Willius v. Mann, 91 Minn. 494, 98 N. W. 341, 867. The district court, upon

the remand of the case to it, made its order restraining the receiver from taking any action for the collection of the amount against the stockholders who were only secondarily liable therefor until the exhaustion of all remedies against those who were primarily liable therefor and until the further order of the court.

On the day of the first failure of the bank, the ancestor of the appellants Furness, through whom they claim, Alexander Ramsey, deceased, was the holder of 82 shares of the stock of the bank, and the appellant Frank Crawshaw was the owner of 44 shares thereof. Only sixty one and a half shares of the stock of the reorganized bank were accepted by Governor Ramsey, and only ten by Crawshaw. The assessments on such shares of stock have been paid in full by the respective appellants. No shares of stock were of record in the name of either Ramsey or Crawshaw in the stock ledger of the reorganized bank at the time of its failure, except the new stock so issued to them respectively. On November 5, 1903, the appellant Crawshaw paid to the receiver the full amount, $3,400, of the assessment on the 34 shares of the stock of the bank held by him before it was reorganized, and for which he did not take new certificates. The condition upon which payment was made was expressed in a receipt given to him by the receiver, which, omitting date and signature, was in the words following:

"Received of Frank Crawshaw $4,400 in full of all liability as a stockholder in the Germania Bank of St. Paul, which he has paid upon the express condition that in case it shall hereafter be determined by the court that the liability of stockholders composing the classes to which his stock belongs is less on account of either of them, or if for any reason it shall hereafter be made to appear to the satisfaction of the court that he has made an overpayment, he is to receive back from said estate the amount of the overpayment; it being the intention that his rights shall not be in any manner prejudiced by his making payment at this time of the full amount claimed by the receiver to be due from him as a stockholder."

On October 4, 1904, the appellants Furness in like manner paid to the receiver the full amount, $2,168.64, including interest, of the assessment on the 20½ shares of the stock of the bank, before its reorganization, held by their ancestor, upon the same condition express-

ed in the receipt given to Crawshaw, and a like receipt was given to them. Fourteen other stockholders belonging to the same class also paid to the receiver the amount of the assessment on their respective stock, seven of whom paid on the condition named in Crawshaw's receipt. The other seven paid unconditionally, making the total fund so paid into court by this class of stockholders, $9,507.25.

On August 13, 1907, the receiver presented his petition to the court, praying that the order theretofore made, restraining him from enforcing the assessment against stockholders secondarily liable therefor, be vacated, and that the fund of $9,507.25 so paid to him be distributed to creditors. Thereupon the court made its order fixing a time and place for a hearing on the petition. Notice of such hearing was given as directed by the court. Only the appellants Furness answered the petition; but the appellant Crawshaw and others appeared at the hearing and objected to the granting the prayer of the petition.

The trial court, after a full hearing of the matter, made its order directing the distribution of the fund, in which the court found, in effect, the following facts: None of the payments so made by the appellants and other stockholders belonging to the same class exceeded the amount of the liability of the respective stockholders making such payments. All has been collected on account of such liability from the stockholders primarily liable therefor that can be collected. The total amount of uncollected primary liability is within the bar of the statute of limitations, except the sum of $31,005.92, which is due from stockholders who are insolvent, and from whom nothing can be collected. All the assets and all that has been collected from stockholders has been distributed, except $27,000 and the fund here in question, leaving the total unpaid indebtedness of the bank $273,000, of which $101,000 arose prior to January 4, 1897. The total collectable secondary liability does not exceed the sum of $30,000.

The appellants' assignments of error are to the effect that the trial court erred in finding that there was no overpayment of their liability, that all has been collected that can be collected from the stockholders primarily liable, and in distributing the fund to creditors.

1. The appellants' first contention is that the stock upon which they paid into court the amounts here in question was included in the 567 shares of stock issued by the reorganized bank to creditors; hence

their relation to and liability on such stock was that of transferrors only, and any action to enforce their liability as transferrors was barred in one year thereafter. Laws 1895, p. 301, c. 145, § 5. The record does not sustain this claim. The most that can be claimed in this connection is that the forfeiture and cancellation of 1,914 shares of stock and the deduction of the amount thereof from the capital stock of the bank as reorganized enabled it to issue to creditors 567 shares of new stock and keep within the authorized limit of its capital stock, $200,000. The evidence fails to identify the stock of the appellants, for which they did not accept new certificates, with the shares of stock issued to creditors in payment of their deposits, which was, in effect, a subscription for stock of the bank to be paid for by their deposits, as provided by the plan of reorganization. Again, it was expressly provided by the judgment of reorganization that none of the stockholders should be released from any of their then existing liability by reason of the reorganization of the bank. The evidence affords no basis for the claim that the appellants were only transferrors of the stock on which they were held secondarily liable.

2. The next contention of the appellants to be considered is that the finding of the court, to the effect that all remedies have been exhausted against stockholders primarily liable for the debts of the bank before its reorganization, is not sustained by the evidence. The order of the court requiring such exhaustion must receive a reasonable construction, and not a technical one. It is not to be construed as requiring the exhaustion of all remedies against stockholders primarily liable in favor of whom the statute of limitations has run. An examination of the evidence satisfies us that it fairly sustains the finding, and we so hold.

3. The appellants further urge, in effect, that the receiver's right to have the fund distributed to creditors is barred by the statute of limitations, and therefore they are entitled to have their respective share of the fund returned to them. This claim is based upon the decision of this court in the case of Willius v. Albrecht, 100 Minn. 436, 111 N. W. 387, 112 N. W. 862, in which it was held that the statute of limitations commenced to run from the appointment of the receiver. This is not an original action to enforce the liability of stockholders, but a proceeding to secure the distribution of a fund paid into court.

by the appellants in full of their stock liability upon the condition that, if for any reason it should thereafter be determined that there was an overpayment, the amount thereof should be repaid. Such payment was made within six years after the appointment of the receiver, and six years has not elapsed since the fund, or any part thereof, was so paid, during which time the receiver was restrained from taking any proceedings against stockholders secondarily liable until the further order of the court. It is clear that the right of the receiver to apply to the court for an order vacating the restraining order and distributing the fund is not barred.

It follows that the finding of the court to the effect that there was no overpayment by the appellants of their liability is sustained by the evidence, and that the court did not err in directing a distribution of the fund.

Order affirmed.